Exhibit "A"

FILE COPY

# LIMITED LIABILITY COMPANY

# OPERATING AGREEMENT

## PRIATEK, LLC

A Delaware Limited Liability Company

Managing Member:

**Priatek Executives LLC**

200 Central Ave; Suite 2300
St. Petersburg, Florida 33701



# PRIATEK, LLC

### A Delaware Limited Liability Company

## LIMITED LIABILITY COMPANY AGREEMENT

This Limited Liability Company Operating Agreement ("Agreement") is made and entered into as of the 2nd day of June 2014, by and among Priatek Executives LLC (the "Managing Member") and each of the parties listed on Schedule B attached hereto and incorporated herein by reference, who shall sign this Agreement as herein provided (collectively the "Limited Liability Company Members").

## ARTICLE I
## DEFINITIONS

Capitalized terms (other than those specifically defined herein) shall have the meanings set forth in the glossary attached hereto as Schedule A.

## ARTICLE II
## THE LIMITED LIABILITY COMPANY

   2.1   Formation of Limited Liability Company.  The "Limited Liability Company" has been formed pursuant to Chapter 18 of Title 6, et seq., of the Delaware Code (the "Code").

The Limited Liability Company is comprised of a total (and maximum) number of 2,700 Limited Liability Company Units valued at up to $12,500 each (the "Units").  The Limited Liability Company, through its Managing Member, by a unanimous vote of the Board of Directors, and a Super Majority consent of the Members, has agreed to offer an additional 270 of the total authorized 2,700 Units for purchase by new Members.  The minimum purchase is 2 Units subject to the discretion of the Board of Directors and the Managing Member. The additional 270 Units may be considered "securities" for purposes of applicable federal or state securities laws.  In the event the Units are considered "securities," the offering of the additional 270 Units are limited to persons or entities who are "Accredited Investors" (as defined in "Regulation D" of the Securities Act of 1933, as amended (the "Act") 17 C.F.R. §230.501 et seq.) and up to a maximum of 35 "Non-Accredited investors," who meet the suitability standards for an investment in the Units.

The terms and provisions in this Limited Liability Company Operating Agreement will be construed and interpreted to accord with the terms and provisions of the Act.  If any of the terms and provisions of this Agreement should be determined to be inconsistent with those of the Act, the Act will control only with respect to the terms and conditions required by the Act (non-discretionary conflicts).

   2.2   Name of Limited Liability Company. The Limited Liability Company will be named "Priatek, LLC" which may conduct business under such other name ("d/b/a") as the Managing Member may from time to time determine, with the approval of a majority vote of the Members.  The Managing Member shall file, or cause to be filed on behalf of the Limited Liability Company, such "d/b/a" certificate or certificates as may from time to time be required by applicable law.

   2.3   Purpose of Limited Liability Company.  The primary objective of Priatek, LLC (the "LLC" or "Limited Liability Company") is to design and manage prize promotions for local and national advertisers through interactive kiosks, mobile devices, and other digital products, or any other related purpose as the Managing Member shall, in its reasonable discretion, determine.  While the Managing Member believes that income is achievable, there is no assurance whether and when it will be achieved.

The Limited Liability Company may do each and everything necessary and suitable for the accomplishment of the primary objective or any other purpose which a company may accomplish which shall, at any time, appear conducive to, or expedient for, the protection or benefit of this Limited Liability Company.

Additionally, the Limited Liability Company also plans to fund start-up and working capital costs and to provide for legal, accounting and consulting fees associated with the organization and operation of the Limited Liability Company.

Subject to consent of the Board of Directors, the Managing Member (or his assignee) may exchange Units for ownership interests or shares in another public or private corporation, subject to a consistently applied formula for all Members for the conversion of Units into the new ownership interests or shares.

In the event any of the Units are considered securities, a Private Placement Memorandum, (the "Memorandum"), is submitted in connection with the private placement of Units. The information, notices and contents of the Private Placement Memorandum are hereby incorporated by reference in their entirety in this Limited Liability Company Agreement with respect to Units which may be considered securities. Without limiting the generality of the foregoing, and in furtherance of such purposes, the Managing Member may perform all acts and functions, including any act incidental or supplementary to the fulfillment thereof and allowed by the Securities Act and this Limited Liability Company Agreement.

Subject to approval of a majority of the LLC's Board of Directors, the Managing Member may be granted authority under the terms of a power of attorney provisions in this Limited Liability Company Agreement to allow the Limited Liability Company Units to merge with, be acquired by, or acquire any public or private company.

2.4   Principal Offices. The principal office of the business of the Limited Liability Company shall be: 200 Central Ave South, Suite 2300, St. Petersburg, Florida 33701. The office address of the Limited Liability Company may be changed to such other place or places as may be determined from time to time by the Managing Member by the giving of written notice of change of address of the principal office of the Limited Liability Company to each Limited Liability Company Member.

2.5   Term of Limited Liability Company. The "Term" of the Limited Liability Company shall be perpetual, from the date hereof ("Effective Date"), unless dissolved or terminated earlier pursuant to the provisions of this Limited Liability Company Agreement. If the Limited Liability Company is dissolved or terminated, all "Net Assets" (assets minus liabilities) of the Limited Liability Company will revert to Members pro rata to their percent ownership of Units.

2.6   Further Assurances. The parties hereto will also execute such certificates and documents, and the Managing Member will file, record and publish such certificates and documents as the Managing Member deems necessary or appropriate to comply with requirements of applicable laws governing the formation and operation of a limited liability company under the Code.

2.7   Governance. The Managing Member shall form an independent Board of Directors within 90 calendar days of the execution of this Limited Liability Company Agreement. At the time of formation of a Board of Directors the Managing Member shall submit to the Members for vote, a set of organizational resolutions, available upon request, which shall set out the roles, responsibilities and authority of the Board of Directors to influence or direct the management of the Limited Liability Company which shall also contain rules and procedures for seating and replacing board members. At such time, the Limited Liability Company will acquire and maintain Director and Officer liability insurance, as necessary, to protect the board.

## ARTICLE III
### PROCEDURE FOR TRANSITION TO PUBLIC OR PRIVATE COMPANY

3.1  A decision to convert no fewer than all of the Limited Liability Company Units into equity interests or shares (at a consistently applied conversion rate for all Units) in a public or private corporation by merger or acquisition may be made by a combination of the following: (i) the approval of the majority of the Board of Directors and (ii) the approval of the Managing Member.

Each of the Limited Liability Company Members is aware that the terms hereof permit certain amendments of this Agreement to be effected and certain other actions to be taken or omitted by or with respect to the Limited Liability Company with the approval of less than all the Limited Liability Company Members. Such actions include, without limitation, appointment and substitution of managers duly appointed.

Any amendment to this Agreement substituting a Limited Liability Company Member or adding a Limited Liability Company Member or Managing Member must be signed by the Managing Member and by the person to be substituted or added as a Limited Liability Company Member. The Limited Liability Company shall continue upon the death, withdrawal, retirement, removal, dissolution, assignment for the benefit of creditors, filing of a petition for bankruptcy, adjudication of bankruptcy, or insanity or incompetency of any Managing Member.

The execution of any amendment to this Agreement proposing, substituting or adding Limited Liability Company Members may be affected by his attorney-in-fact or duly authorized representative of such person or entity.

## ARTICLE IV
### NAME AND ADDRESS OF THE MANAGING MEMBER

Managing Member. The name, address and principal place of business of the Managing Member is as follows:

Priatek Executives LLC
Priatek Plaza
200 Central Avenue; Suite 2300
St. Petersburg, Florida 33701

## ARTICLE V
### PURPOSE AND POWERS OF THE MANAGING MEMBER

The purposes of the Limited Liability Company will be as set forth in Section 2.3 hereof. Unless a vote of the majority of the Board of Directors is required by this Agreement (or otherwise as required by the Act), the Managing Member is authorized to do any and all acts and things necessary, appropriate, proper, advisable, incidental to, or convenient for, accomplishing and carrying out the purpose of the Limited Liability Company, including but not limited to the following:

5.1      Acquire, in the name of each Limited Liability Company Member, shares of stock in a public or private corporation in the event of a merger or acquisition affecting the Limited Liability Company;

5.2      Employ such personnel and obtain such legal, accounting and other professional services and advice as the Managing Member deems advisable in the course of the Limited Liability Company's operations;

5.3    Borrow money and issue evidences of indebtedness and secure any such indebtedness by pledge or other lien, as shall be necessary for the conduct and business of the Limited Liability Company as authorized by the Limited Liability Company;

5.4    Negotiate for and conclude agreements for, among other things, use, maintenance, manufacture, operation, research/development, improvement, optimization, marketing, licensing, sale, exchange or other disposition of all or any portion of the assets by the Limited Liability Company, including, but not limited to, use agreements, partnership and joint venture agreements, licensing agreements, sub-licensing agreements, production agreements, option and literary purchase agreements, distribution agreements, merchandising agreements, share sale and purchase agreements, services agreements, manufacturing agreements, marketing agreements, purchase option agreements and royalty agreements.

## ARTICLE VI
### CAPITAL ACCOUNTS AND CONTRIBUTIONS

6.1    Capital Account, as defined herein. There shall be maintained for each Limited Liability Company Member a separate Capital Account. In calculating capital account balances, general tax accounting principles shall be used.

6.2    Capital Contributions. The names of all Limited Liability Company Members, and ownership interests shall be set forth as an exhibit to this Agreement, as shall be amended from time to time by the Managing Member (available upon request). Each Limited Liability Company Member has made, or agrees to make, an initial Capital Contribution to become a Member of the Company.

6.3    Subsequent Capital Contributions. Limited Liability Company Members are not obligated to make additional Capital Contributions unless unanimously agreed by all the Limited Liability Company Members. If subsequent Capital Contributions are unanimously agreed by all the Limited Liability Company Members in writing, the Limited Liability Company Members shall make such additional Capital Contributions on a pro rata basis in accordance with each Limited Liability Company Member's respective interest or as otherwise unanimously agreed by the Members.

6.4    Loans to the Limited Liability Company. The amount of a loan, if any, made to the Limited Liability Company by a Limited Liability Company Member shall not be considered an increase in such Limited Liability Company Member's capital contribution or otherwise constitute a contribution to the Limited Liability Company, nor shall the making of such loan entitle such Limited Liability Company Member to an increased share of the profits, losses or distributions to be made pursuant to the provisions of this Agreement. Loans made to the Limited Liability Company shall bear such interest rate as shall be reasonably agreed between the Managing Member and the person making such loan.

## ARTICLE VII
### PROFITS; LOSSES; DISTRIBUTIONS

7.1    Profits and Losses. The "Profits" and "Losses" of the Limited Liability Company shall mean (during each accounting period of the Limited Liability Company) the net profits and net losses of the Limited Liability Company as determined on the elected (accrual or cash receipts and disbursements) basis of accounting for tax purposes.

(a)    The profits and losses of the Limited Liability Company and all items of income, gain, loss, deduction or credit which enter into the computation thereof shall be allocated for each year of the Limited Liability Company among the Limited Liability Company Members of record as of the end of such year in the manner provided below.

(b)    In the event of an assignment of an interest in the Limited Liability Company by a Limited Liability Company Member, profits and losses and items of income, gain, loss, deduction or credit for the year in which such assignment is made shall be allocated between the assignor and the assignee based upon the length of time in such year, as measured by the effective date of the assignment (determined as specified in Section 14.4), during which the interest in the Limited Liability Company so assigned was owned by each of them.

(c)    The Initial Investors, as defined below, of the Limited Liability Company shall receive pro rata distributions of 100% of the net profit of the Limited Liability Company until such time as the Initial Investors have received payouts totaling 100% of the amount of their initial Capital Contribution in the Limited Liability Company. Thereafter, the Company's net Profits shall be distributed pro rata to all of the Limited Liability Company Members on an annual fiscal year end basis minus any net profit allocated as reinvestment capital at the Managing Member's reasonable discretion. If pursuant to this Agreement dissolution occurs, and the Limited Liability Company has terminated its operations, all net assets of the Limited Liability Company (after satisfaction of all debt outstanding and outstanding claims of any creditors) will be distributed to the current Members of record at the time of dissolution on a pro rata basis. For a voluntary dissolution of the Limited Liability Company to be effective it shall require the approval by vote of the Managing Member and a majority of the Board of Directors.

(d)    The Units may be redeemed by the Limited Liability Company at the sole discretion of the Managing Member (in whole or in part) for an amount in cash equal to the initial investment of the Member's Units on the date such Units are redeemed, upon the mutual consent of the Managing Member and the redeeming Member. In the case of redemption, no obligation shall be owed by the Limited Liability Company to Limited Liability Company Members who have had their Units redeemed by the Limited Liability Company. Neither party has a Call or Put right of redemption. For purposes of this provision, "Value" shall mean the most recently determined fair market value of the Limited Liability Company divided by the number of Member shares being redeemed.

7.2    Contingency Reserves. The Managing Member shall have the right to set up such capital reserves and to set aside Limited Liability Company funds therein as the Managing Member in his discretion determines to be reasonable in connection with the operation of the Limited Liability Company's business, including sums the Managing Member deems necessary to reserve for future payment or reduction of obligations of the Limited Liability Company.

7.3    Cash Flow Distributions to Limited Liability Company Members. The Limited Liability Company shall distribute to the Limited Liability Company Members all net profits less necessary reserves as defined in 7.2 of the Limited Liability Company annually, in the same proportion that net Profits and Losses are being allocated between the Limited Liability Company Members and the Managing Member, pursuant to Section 7 hereof. The Managing Member can determine to change the distribution of net Profits or Losses to a quarterly or semi-annual basis. Limited Liability Company Members will receive distributions according to the books and records of the Limited Liability Company and the amount of the distribution will be based pro rata on the number of days within the distribution period that each person was a Member.

7.4    Limitation of Liability. Nothing contained in this Article VII shall be construed as making any Limited Liability Company Member personally liable for any actual cash losses of the Limited Liability Company.

7.5    Allocation among Limited Liability Company Members. Distributions payable, and net Profits, Losses and other items allocated to the Limited Liability Company Members pursuant to this Section 7 or other provisions of this Agreement shall be allocated amongst them in proportion to their ownership of Limited Liability Company Units at the time of such payments or allocations unless otherwise noted in the Agreement.

## ARTICLE VIII
### DEPOSIT AND USE OF LIMITED LIABILITY COMPANY FUNDS

Upon formation of the Limited Liability Company, all monies received by the Limited Liability Company from the Limited Liability Company Members shall be deposited in a Limited Liability Company account or accounts, which shall be in such bank or banks as are selected by the Managing Member, and which shall be maintained in the name of and for the benefit of the Limited Liability Company.

Thereafter, all revenues, bank loan proceeds and other receipts will be deposited and maintained in such account or accounts and all expenses, costs and similar items will be paid from such accounts by the Managing Member for Limited Liability Company purposes.

Until required in the conduct of the Limited Liability Company's business, Limited Liability Company funds, including, but not limited to, Limited Liability Company Members' capital contributions, Limited Liability Company revenue and proceeds of borrowings by the Limited Liability Company, will be maintained on deposit (including time deposits) in such account or accounts, with or without interest, or prudently invested in short-term governmental securities, certificates of deposit, money market funds, bank repurchase agreements or commercial paper as the Managing Member, in consultation with members of the management team and outside professionals, deems advisable.

Any interest or other income generated by such deposits or investments will be for the Limited Liability Company account. Limited Liability Company funds from any of the various sources mentioned above may be commingled with other Limited Liability Company funds, but not with the separate funds of the Managing Member, or any other person, partnership or entity, and may be withdrawn, expended and distributed as authorized by the terms and provisions of this Agreement.

## ARTICLE IX
### REIMBURSEMENTS, ORGANIZATION FEES AND MANAGING MEMBER FEES

9.1     Reimbursement of Direct Expenses. The Managing Member shall be entitled to prompt reimbursement for all direct expenses borne, incurred or advanced by it on behalf of the Limited Liability Company, approved by the Board of Directors and in conformance with IRS guidelines.

9.2     Organization and Offering Expenses. Organization and offering expenses of the Limited Liability Company shall be paid by the Limited Liability Company or reimbursed to the Managing Member upon presentation of documentation for same.

## ARTICLE X
### LIMITATION OF LIABILITY

Notwithstanding anything contained herein to the contrary, no Limited Liability Company Member shall be liable for the debts, liabilities or obligations of the Limited Liability Company in excess of his capital contributions and distributions (subject to the time limitations below).

In the case of insolvency or upon dissolution, a Limited Liability Company Member who has received distributions from the Limited Liability Company shall only be liable to the Limited Liability Company or its creditors for the sum of (i) the aggregate amount of net profit and whole or partial returns of capital distributed to the Limited Liability Company Member within the preceding one (1) year, and (ii) the sum total of any capital contribution to the Limited Liability Company.  In addition, no Limited Liability Company Member shall be

liable to pay any portion of the capital contribution or other distributions of any other Limited Liability Company Member.

The Limited Liability Company shall indemnify the Managing Member and hold the Managing Member harmless from any liability or loss suffered by the Limited Liability Company Members solely by virtue of the Managing Member acting on behalf of the Limited Liability Company; provided, however, that such indemnification shall only be recoverable from the net assets of the Limited Liability Company and not the personal assets of the Managing Member.

The Managing Member shall not be liable to the Limited Liability Company for any liability or loss suffered by the Limited Liability Company. Notwithstanding the above, if such loss or liability arises out of any action or inaction of the Managing Member, the Managing Member shall not be liable to the Limited Liability Company provided that such course of conduct was in the best interest of the Limited Liability Company or that a court of competent jurisdiction has not determined pursuant to a final decree that such course of conduct constituted gross negligence or gross misconduct by the Managing Member.

## ARTICLE XI
### GOVERNANCE, THE MANAGING MEMBER AND THE BOARD OF DIRECTORS

11.1    Powers, Duties and Obligations of the Managing Member. The Managing Member shall have full, exclusive and complete discretion in the management and control of the affairs of the Limited Liability Company, subject to review and approval by the Board of Directors (when one has been elected) for the purposes herein stated, and shall make all decisions affecting the Limited Liability Company affairs, including all decisions made regarding the administration, supervision, and management of the Limited Liability Company's business. The Managing Member shall hold office for an indefinite number of years.

Subject to the restrictions otherwise contained in this Agreement, the business and affairs of the Limited Liability Company shall be managed and supervised by the Managing Member. The Managing Member shall have all necessary powers to carry out the purposes of the Limited Liability Company and, subject to the provisions of Sections 11.2 and 11.3, is authorized to enter into agreements with respect to any and all matters pertaining to the business of the Limited Liability Company, subject to review by the Board of Directors.

The Managing Member shall devote as much time and effort to the Limited Liability Company as shall be determined in its reasonable discretion. Nothing contained herein shall prevent the Managing Member from engaging in any other business or activity except for another business or activity which would be a competitive enterprise to the Limited Liability Company.

The following enumeration of powers is in amplification, and not in limitation, of the general powers and authority of the Managing Member, as conferred by the Board of Directors, on behalf of and in the name of the Limited Liability Company:

- To buy, sell, acquire, exchange, trade, receive, deliver, hold, encumber, pledge, release and otherwise deal in and with and dispose of Limited Liability Company property, in his reasonable discretion and in the ordinary course of business of the Limited Liability Company. The sale of any Limited Liability Company property to any person or organization, who or which is an affiliate of the Limited Liability Company, shall require the approval of (i) the Managing Member, and (ii) a majority of the Board of Directors.

- To execute and deliver such documents or instruments relating to Limited Liability Company affairs as may in its opinion be appropriate, including; licenses, employment, consultation and management agreements, notes, leases, and bills of sale.

- To open, maintain and close bank accounts as shall be designated by the Managing Member and to draw checks and other orders on such accounts for the payment of money signed by the Managing Member or by his authorized representatives. Such transactions shall be approved by the Board of Directors and disclosed to the Members.

- To borrow money and to make, issue, accept, endorse and execute promissory notes, drafts, bills of exchange and other instruments and evidences of indebtedness, all without limit as to amount, and to pay or repay with respect thereto and to secure the payment thereof by security interest, mortgage, deed of Limited Liability Company, pledge or assignment or, all or any part of any property then owned or thereafter acquired by the Limited Liability Company.

- To employ such employees, consultants, accountants, managers, agents, appraisers, attorneys and other persons in the operation, conduct, administration and supervision of the business of the Limited Liability Company.

- To obtain, at the expense of the Limited Liability Company, liability and other insurance coverage that the Managing Member, in the Managing Member's sole discretion, may determine to be necessary to protect the Limited Liability Company Members, Board of Directors and Officers from liability created in pursuit of or in the furtherance of the Limited Liability Company business or related business affairs.

- To perform any and all other acts or activities customary or incidental to the acquisition, ownership, management, improvement and disposition of property employed in connection with the Limited Liability Company's business.

- With the consent of the Board of Directors, to apply or file for any registration or exemption under the securities laws of any state or the Securities Act of 1933, as amended, or any other state or Federal securities rules, regulations or laws for the sale of Units of the Limited Liability Company.

- With the consent of the Board of Directors, the Managing Member may elect either a cash or accrual basis of accounting (or a subsequent conversion from one to the other) and may amend this Agreement (i) to comply with current applicable requirements of the Internal Revenue Code, Treasury Regulations and rulings of the Internal Revenue Service, (ii) in accordance with advice given to the Managing Member by the Limited Liability Company's independent accountants, or (iii) to comply with any applicable state laws or regulations. The Managing Member will notify the Limited Liability Company Members concerning any changes in accounting basis.

- To secure any and all authorizations or permits in connection with the business of the Limited Liability Company, and to execute, acknowledge, file and deliver any and all applications, documents and consents which the Managing Member may deem appropriate in connection therewith. Except as specifically provided herein to the contrary, to amend this Agreement in any way deemed necessary or appropriate, necessary or desirable; (i) to satisfy any requirements, conditions, guidelines or options contained in any opinion, directive, order, ruling or regulation of the Securities and Exchange Commission, the Internal Revenue Service, or any other Federal or state agency, or in any Federal or state statute, compliance with which the Managing Member deems to be in the best interest of the Limited Liability Company, or, (ii) cure any ambiguity or correct or supplement any provisions herein contained.

- To keep or cause to be kept books of account and other records of the Limited Liability Company at the principal address of the Limited Liability Company which shall be reviewed annually by an accounting firm and the results available for inspection by any Limited Liability Company Member upon request.

- To institute, prosecute, defend and settle any legal or administrative action or proceeding on behalf of, or against, the Limited Liability Company, and to join in any litigation against any individual Limited Liability Company Member in any cause of action against the Limited Liability Company.

- To the extent that funds of the Limited Liability Company are available therefore, pay all debts and other obligations of the Limited Liability Company, including loans to the Limited Liability Company, and all other costs of operation and maintenance of the Limited Liability Company.

- To the extent that funds of the Limited Liability Company are available therefore, pay or cause to be paid all taxes, assessments, rents, and other impositions applicable to the Limited Liability Company's assets (using their best efforts to pay the same before delinquency and prior to the addition thereto of interest or penalties), and undertake when appropriate, any action or proceeding seeking to reduce such taxes, assessments, rents or other impositions.

- To cause the Limited Liability Company to make an election pursuant to sections 108, 1017, 732(d) or 754 of the Internal Revenue Code as may be determined by the Managing Member in consultation with qualified tax professional(s). Prepare or cause to be prepared and file all tax returns for and on behalf of the Limited Liability Company, and its tax matters member within the meaning of Section 623 1 (a)(7) of the Internal Revenue Code.

- To propose future authorizations of additional Units of the LLC subject to approval by a majority vote of the Board of Directors to the extent permitted by applicable law. Upon approval, the Operating Agreement shall be amended to reflect the increase and the additional Units shall be immediately authorized. All newly issued Units will affect the Interests of existing members equally.

- Establish any additional classes of Limited Liability Company Members other than or in addition to those contemplated in this Agreement or any official investment memorandum of the Limited Liability Company.

- File or consent to the filing of a petition under any federal or state bankruptcy, insolvency or reorganization act with respect to the Limited Liability Company.

- To contribute the proceeds with the approval of the Board of Directors, Limited Liability Company Member Units, and interests in the Limited Liability Company, to a public or private corporation in exchange for equities in the public or private corporation for the benefit of the Limited Liability Company. In the event such a transaction were to occur, the Limited Liability Company Member's funds could be converted into an array of securities, providing for the Managing Member to instruct the transfer agent of the public company to issue securities directly into the name of each Limited Liability Company Member consistent with a conversion value equally and consistently applied to all Units.

- The Managing Member will regularly disclose the condition of the company, the pertinent activities and risks and other such disclosures as the Managing Member and the Board of Directors deems appropriate.

11.2   Restrictions. The Managing Member shall not, without the prior consent of the Board of Directors and a "Super Majority" of 75% Majority in Interest of the Limited Liability Company, have the power to:

    (a)   Do any act in contravention of this Agreement;

    (b)   Possess Limited Liability Company property or assign its rights in Limited Liability Company property for other than a Limited Liability Company purpose;

    (c)    Sell, exchange, or transfer all or substantially all of the assets of the Limited Liability Company, (notwithstanding the foregoing, the Managing Member may sell, or grant a non-exclusive use or license regarding, the assets of the Limited Liability Company without the consent of any Limited Liability Company Member); and

    (d)    Amend this agreement except as provided otherwise in section 17.2.

11.3    Duties of the Managing Member.

    (a)    The Managing Member shall promptly take or cause to be taken all action which may be necessary or appropriate for the proper management, maintenance and operation of the Limited Liability.

    (b)    The Managing Member shall furnish to the Limited Liability Company Members, within 120 days after the end of each fiscal year, financial statements for the Limited Liability Company reviewed by the Board of Directors and prepared on the elected (accrual or cash receipts and disbursements) basis of accounting for tax purposes.

The Managing Member shall also, on or prior to April 15th in each calendar year, furnish each Limited Liability Company Member with his Schedule K-1, setting forth taxable income (loss) from the Limited Liability Company for the preceding fiscal year, and appropriate state income tax information where applicable. The Limited Liability Company shall be on the elected (accrual or cash receipts and disbursements) basis of accounting for tax purposes. The Limited Liability Company shall file with the Internal Revenue Service and all appropriate local taxing authorities such income tax reports as may be required.

11.4    Contracts and Arrangements with Affiliates.

    (a)    The Managing Member may, on behalf of the Limited Liability Company, employ such agents, employees, managers, accountants, attorneys, consultants and other persons, including itself, necessary or appropriate to carry out the business and affairs of the Limited Liability Company, whether or not any such persons so employed are Affiliates of the Managing Member; and the Managing Member may pay such fees, expenses, salaries, wages and other compensation to such persons as it shall in its reasonable discretion determine.

    (b)    The Managing Member may also, on behalf of the Limited Liability Company, enter into contracts for goods or services with itself or with any of its affiliates. The validity of any transaction, agreement or payment, involving the Limited Liability Company and the Managing Member or any affiliate and otherwise permitted by the terms of this Agreement, shall not be affected by reason of (i) the relationship between the Limited Liability Company and the Managing Member or such affiliate or (ii) the approval of said transaction, agreement or payment by members, officers or directors of the Managing Member.

11.5    Tax Matters Limited Liability Company Member.

The Managing Member is designated as the "tax matters member" within the meaning of Section 6231(a)(7) of the Code.

11.6    Miscellaneous.

    (a)    The Managing Member shall not be personally liable for the return of any contribution made to the Limited Liability Company by a Limited Liability Company Member.

      (b)     The Managing Member shall not be personally liable to the Limited Liability Company or to the Limited Liability Company Members for any act or omission performed or omitted by it so long as in so acting or omitting to act it is not guilty of fraud, willful misconduct or gross negligence.

      (c)     The Limited Liability Company shall indemnify and hold the Managing Member, its agents, and any Limited Liability Company employee or agent (each an "Indemnified Party") harmless from any loss, damage, fine, penalty, expense (including attorneys' fees), judgment or amount paid in settlement incurred by such Indemnified Party by reason of his or its performance or nonperformance of any act concerning the activities of the Limited Liability Company or in furtherance of its interests or purposes; provided however, that there shall be no indemnification in relation to matters as to which such Indemnified Party is adjudged to have been guilty of fraud, willful misconduct or gross negligence.

Expenses incurred in defending a civil or criminal action, expenses in defending an investigation, investor claims, suit or proceeding against the Limited Liability Company and/or the Managing Member will be paid by the Limited Liability Company in advance of the final disposition of such action, suit or proceeding upon receipt of an undertaking by or on behalf of an Indemnified Party to repay such amount if it shall finally be determined that he is not entitled to be indemnified by the Limited Liability Company as authorized herein.

The indemnification provided by this subsection (c) of this Section 11.6 shall not be deemed exclusive of any other rights to which an Indemnified Party may be entitled under any agreement, vote of Limited Liability Company Members, or otherwise; shall continue as to a person who has ceased to be an Indemnified Party; and shall inure to the benefit of the heirs, executors and administrators of such a person.

The Limited Liability Company shall have the power to purchase and maintain insurance on behalf of any person who is or was an Indemnified Party against any liability asserted against him and incurred by him in any such capacity, or arising out of his status as such, in accordance with Section 11.1 herein, whether or not the Limited Liability Company would have the power to indemnify him against such liability under the provisions of this subsection.

      (d)     The Managing Member may, from time to time, move the principal office of the Limited Liability Company (or establish additional and satellite offices, as appropriate) to such location as the Managing Member shall, in its sole discretion, deem best suited for the conduct of the business of the Limited Liability Company.

11.7    Managing Member and Team Compensation

The Managing Member shall be responsible for instituting a fair and equitable compensation program for employees of the Company. Employee salaries, incentives, and wages will be considered through prevailing market rates, internal equity measurements, and performance. Compensation (to potentially include salary, incentive/performance bonus, commissions and allowances) will be determined by the Managing Member in consultation with members of the management team, according to guidelines set by the management team during the budget process. Annual salary and developmental reviews will be conducted.

The salary for the Managing Member, and any increases or decreases, will be set and approved by the Board of Directors and reviewed at least annually by the board.

The Managing Member will be responsible for enacting through his management team such policies covering employee benefits as are necessary to recruit, maintain and affect performance for the workforce. Such benefits may include, but are not limited to vacation, insurance, and performance pay. Some benefits may be applied equally to all employees (specifically as called for by law) while others may be applied in different measures by position.

11.8  Managing Member Responsibility in the Acquisition of Assets

The Managing Member may, on behalf of the Limited Liability Company, enter into negotiations and acquire assets for the use of the Company, provide investments in other entities in the name of the Company or use funds to form subsidiaries of the Company. The Managing Member will not use the funds of the Company to purchase private assets for the Managing Member, any other Member or employee. This provision would not preclude the Managing Member from acquiring units to be used as compensation for employees. The Managing Member may use funds of the Company as investments for the Company. Any return from these investments will be provided to the Company and not to the Managing Member, any other Member or employee. If any such subsidiary is formed, any return or profit from the subsidiary will accrue to the Company and not the Managing Member, any other member or employee.

11.9    The Board of Directors

It is the intention of the Limited Liability Company to set up a Board of Directors to govern the activities of the Company and review the performance of the Managing Member. The Board of Directors shall be chosen by the Members and will review the activities of the business, review and comment on the accuracy and sufficiency of the reporting activities and be responsible for representing the interests of the Members. In addition to The Managing Member, the Board of Directors will be responsible for proposing changes to the Agreement. The Board of Directors will be constituted as soon as practical and will contain an investor to represent the interests of the Members. The duties of the Board of Directors will be enumerated, presented to the members for approval and then formed as soon as is practical.


ARTICLE XII
LIMITED LIABILITY COMPANY MEMBERS

12.1    Names of Limited Liability Company Members shall be set forth on Schedule B attached hereto.

12.2    No Liability of Limited Liability Company Member as a Managing Member. No person dealing with the Limited Liability Company shall consider a person as a Managing Member unless such person has been named as such on the Limited Liability Company's Certificate of Limited Liability Company (or an amendment thereto).

12.3    Authority. No Limited Liability Company Member shall interfere in any manner (with the exception of rights and privileges that are enumerated in other sections of the Agreement) with, the conduct or control of the business of the Limited Liability Company. No Limited Liability Company Member shall have the right to bring an action for partition against the Limited Liability Company, or the right to receive interest on his Capital Account balance.

12.4    Meetings.

(a)    A meeting of the Limited Liability Company Members for the purpose of acting upon any matter upon which the Limited Liability Company Members are entitled to vote may be called by the Managing Member at any time and shall be called by the Managing Member no more than 15 days after receipt of a written request for such a meeting signed by at least 50.1 percent in interest (a simple majority of the interest holders) in the Limited Liability Company. The Managing Member shall give written notice of any such meeting to all Limited Liability Company Members and such meetings shall be held no sooner than 10 days and no more than 60 days after the Managing Member sends such notice to the Limited Liability Company Members.

(b)    The Managing Member may, and, no more than 15 days after receipt of a written request signed by at least 50.1% percent in Interest of the Limited Liability Company interest holders, submit any matter upon which the Limited Liability Company Members are entitled to vote to the Limited Liability Company interest holders for a vote by written consent without a meeting. Such written consents shall be treated for all purposes as votes at a meeting.

(c)    In addition, any matters upon which the Limited Liability Company Members are entitled to vote may be submitted by the Managing Member to the Members for a vote by written consent without a meeting, which ballots shall be cast within 10 days of being sent. Such written consents shall be treated for all purposes as votes at a meeting.

(d)    The presence in person or by proxy of at least a 60% majority in interest of the Limited Liability Company shall constitute a quorum at all meetings of the Limited Liability Company Members; provided, however, that if there is no such quorum the Managing Member may adjourn the meeting without further notice, until a quorum shall have been obtained.

Notice of the time, place and purpose of any meeting of Limited Liability Company Members shall be given to any Limited Liability Company Members (to attend in person or be represented by proxy) except for a Limited Liability Company Member who executed and filed a written waiver on record prior to the meeting.

Each Limited Liability Company Member may authorize any person or persons to act for him by proxy with respect to any matter in which a Limited Liability Company Member is entitled to vote or participate.

Every proxy must be signed by the Limited Liability Company Member or his attorney-in-fact. No proxy shall be valid after such time as it expires by the terms of the proxy. Every Limited Liability Company Member proxy shall be revocable at the pleasure of the Limited Liability Company Member executing it and no proxy deemed irrevocable shall be valid.

12.5    Rights of Limited Liability Company Members.

(a)    A 75% "Super Majority" in Interest of the Limited Liability Company interest holders may:

(i)    Amend this Agreement, subject to approval of the Board of Directors, and the conditions that such amendment shall not (A) increase the capital contribution of a Limited Liability Company Member without his written consent, (B) alter the rights, powers and duties of the Managing Members as set forth in Article XI, the interests of the Managing Member in cash flow or Profits and Losses as set forth in Article VII, the interest of the Managing Member in distributions upon liquidation as set forth in Article XV, or the valuation of the Managing Member's Interest in the Limited Liability Company as set forth in this Section 12.5, (C) without the Consent of all the Limited Liability Company Members, modify the method provided in Article VII of determining Profits and Losses and the order and allocations thereof and of determining distributions of Cash Flow and the order thereof, (D) amend this Section 12.5 without the Consent of all Limited Liability Company Members, or (E) amend any provision hereof which requires the consent, action or approval of a specified percentage in interest of the Limited Liability Company Members without the consent of such specified percentage of Limited Liability Company Members;

(ii)    Dissolve the Limited Liability Company, subject to the provisions of this Limited Liability Company Agreement; or

(iii)    admit additional Managing Members; provided, that, despite the foregoing, an additional Managing Member may be admitted only upon the written consent of the then-

current Managing Member and the consent of a majority of the Board of Directors; provided that the voting rights and rights to consent set forth in this Section 12.5 and Section 10.3 shall not come into existence or be effective in any manner unless and until (A) either: (1) the Limited Liability Company has received an opinion of counsel, which counsel is not objected to by a 75% Majority in interest of the Limited Liability Company, that such action may be effected without subjecting the Limited Liability Company Members to liability as managing members under the Code or under the laws of any other jurisdiction in which the Limited Liability Company is then re-formed, qualified or conducting business, or (2) a Delaware court, and/or a court in any other jurisdiction in which the Limited Liability Company is then re-formed, qualified or conducting business, having jurisdiction over the matter enters a judgment, not subject to further appeal, to such effect and (B) either (1) the Limited Liability Company has received an opinion from such counsel that such action may be effected without changing the Limited Liability Company's status as a limited liability company for federal income tax purposes or (2) a court having jurisdiction over the matter enters a judgment, not subject to further appeal, or the Internal Revenue Service issues a ruling, to such effect.

(b)    If a Limited Liability Company Member withdraws from the Limited Liability Company, he is entitled to receive any distributions provided for by this Agreement up to the date of his withdrawal.

(c)    The Managing Member may cause to allow the Limited Liability Company's financial statements to be issued quarterly. Said reports, at the discretion of the Managing Member, may be made available to each Investor based upon written requests received. The financial reports may include but not be limited to a Limited Liability Company balance sheet, income statement and cash flow statement

The Managing Member, at the Managing Member's option, may answer all inquiries from prospective Investors and/or their authorized representatives concerning the Offering, the Limited Liability Company and any matter relating to the offer and sale of the Limited Liability Company Units and may afford, at the Managing Member's option, the prospective Investor and/or their authorized representatives the opportunity to obtain any additional information necessary to verify the accuracy of any representation or information set forth in the Memorandum.

12.6    Managing Member and its Affiliates Purchase of Units. The Managing Member and affiliates of the Managing Member may purchase Limited Liability Company Units and thereby become Limited Liability Company Members.

ARTICLE XIII
OTHER BUSINESS

13.1    All of the Limited Liability Company Members and their officers, directors and employees may engage in, or possess an interest in, other business ventures of every nature and description, independently or with others, whether or not such other enterprises shall be in connection with the Limited Liability Company except for another business which would be a direct competitor to the Company. Neither the Limited Liability Company nor the other Limited Liability Company Members shall have any right by virtue of this Agreement in and to such independent ventures or to the income or profits derived therefrom.

13.2    Payments to Limited Liability Company Members.

The Limited Liability Company intends to make distributions to the Limited Liability Company Members based on the Limited Liability Company Member's ownership of Limited Liability Company Units.

13.3    Limited Liability Company Management Fees.

Management compensation yet to be determined shall be complemented by the understanding that the Limited Liability Company shall reimburse the Managing Member, at the Managing Member's cost, for direct expenses incurred when performing Limited Liability Company services, including but not limited to accounting services, travel, telephone, postage, legal and other related Limited Liability Company expenses.

13.4    Investment Activities and Use of Proceeds.

There is no minimum amount of capital that must be raised before the Managing Member may use the proceeds. A portion of the proceeds may be applied to commissions, if any, marketing, organizational, professional, consultation and other front costs. A portion of the proceeds may also be applied to Limited Liability Company activities under the Managing Members sole discretion and business judgment.

13.5    Interest Conversion upon Acquisition or IPO.

The Units shall be mandatorily convertible into common shares (or common stock, if the Limited Liability Company has been converted into a corporation) upon the consummation of an IPO, acquisition or merger, unless and to the extent that the Limited Liability Company has notified the holders of the Units and the investor has agreed, that proceeds of the IPO, acquisition or merger will be used to redeem the Units and such Units are in fact redeemed and redeemable within 10 business days after the consummation of the IPO, acquisition or merger. The proceeds of any such transaction, whether they are in stock or cash, will be distributed to the holder. Assuming the terms of the IPO, acquisition or merger shall permit the following and upon IPO, acquisition or merger, the number of common shares (or shares of common stock, if the Limited Liability Company will have been converted into a corporation) will be as follows:

(a)    assuming the Member who is also an Initial Investor will have been fully allocated his 100% ROI (return on investment) by the date of consummation of the IPO, acquisition or merger, the investor will be entitled to receive a pro rata percentage of the proceeds from the IPO, acquisition or merger; or

(b)    assuming the Member who is an Initial Investor will not have been fully allocated his 100% ROI (return on investment) by the date of consummation of the IPO, acquisition or merger, the Member will be entitled to receive an amount that will provide a full return of the investors investment and then the remaining proceeds will be distributed pro rata to the Members from the remaining proceeds from the IPO, acquisition or merger.

ARTICLE XIV
WITHDRAWAL OF THE MANAGING MEMBER
GENERAL TRANSFERABILITY OF LIMITED LIABILITY COMPANY INTERESTS

14.1    Withdrawal of Managing Member.

A Managing Member may withdraw from the Limited Liability Company. The Managing Member may withdraw at any time by giving written notice to the Members. Any such withdrawal shall take effect at the time specified therein or, if the time is not specified therein, upon the receipt thereof, irrespective of whether any such resignations shall have been accepted.

14.2    Transfer of Managing Member's Interest

The Managing Member shall be allowed to sell, assign, transfer, mortgage, charge, or otherwise dispose of ten percent or less of its interest in the Limited Liability Company at will. The Managing Member shall not sell, assign, transfer, mortgage, charge or otherwise dispose of more than ten percent of its interest in the Limited Liability Company without the written consent of a majority of the Board of Directors. Any attempted or purported sale, assignment, transfer, mortgage, charge or other disposition made without such consent shall be automatically void. No sale, assignment, transfer, mortgage, charge or disposition made by a Managing Member shall in any event release such Managing Member from its obligation under this Agreement.

    14.3   Assignment of Limited Liability Company Member's Interest.

    (a)   Subject to any restrictions on transferability required by law or contained elsewhere in this Agreement, a Limited Liability Company Member may assign in writing his interest in the Limited Liability Company, provided:

    (i)   the assignee meets all of the requirements applicable to a Limited Liability Company Member purchasing Units in the Limited Liability Company as set forth in the Act or is otherwise entitled to an applicable regulatory exemption for a similar securities offering pursuant to state or federal law, and consents in writing, in form satisfactory to the Managing Member, to be bound by the terms of this Agreement as a Limited Liability Company Member;

    (ii)   immediately after the effective date of the assignment (as hereinafter defined), neither the assignee nor the assignor, if the assignor has retained any part of his interest in the Limited Liability Company, shall hold an interest in the Limited Liability Company that represents a capital contribution to the Limited Liability Company that is less than one (1) unit;

    (iii)   the Managing Member consents in writing to the assignment, which consent shall be withheld only if such assignment (i) does not comply with this section 14 or (ii) violates, or cause the Limited Liability Company to violate, any applicable law or governmental rule or regulation, including (without limitation) any applicable federal or state tax or securities law;

    (iv)   if requested by the Managing Member, an opinion from counsel for the Limited Liability Company is delivered to the Managing Member stating that, in the opinion of said counsel, such assignment would not violate, nor cause the Limited Liability Company to violate, any applicable law or governmental rule or regulation, including (without limitation) any applicable federal or state tax or securities law; and

    (v)   the assignor has paid in full, in cash, his capital contribution to the Limited Liability Company.

By executing this Agreement, each Limited Liability Company Member shall be deemed to have consented to any assignment consented to by the Managing Member. Anything herein to the contrary notwithstanding, in no event shall an assignment be made to a minor (except in trust or pursuant to the Uniform Gifts to Minors Act) or to an incompetent.

    (b)   Each Limited Liability Company Member agrees that he will, upon request of the Managing Member, execute such certificates or other documents and perform such acts as the Managing Member deems appropriate after an assignment of interest by that Limited Liability Company Member to preserve the limited liability status of the Limited Liability Company under the laws of the jurisdictions in which the Limited Liability Company is doing business. For purposes of this paragraph, any transfer of an interest in the Limited Liability Company, whether voluntary or by operation of law, shall be considered an assignment.

(c)    Any purported assignment of an interest in the Limited Liability Company that is not made in compliance with this Agreement is hereby declared to be null and void and of no force or effect whatsoever.

(d)    Each Limited Liability Company Member agrees that he will, prior to the time the Managing Member consents to an assignment of interest by that Limited Liability Company Member, pay all reasonable expenses, including attorneys' fees, incurred by the Limited Liability Company in connection with such assignment.

(e)    Each of the Limited Liability Company Members, by executing this Agreement, hereby covenants and agrees that he will not, in any event, sell or distribute his interest or any portion thereof unless, in the opinion of counsel to the assignee (which counsel and opinion shall be satisfactory to counsel for the Limited Liability Company) delivered to the Managing Member prior to such assignment, such interest may be legally sold or distributed in compliance with applicable state and federal statutes, rules and regulations.

14.4    Assignee's Rights.

An assignee of any interest of a Limited Liability Company Member in the Limited Liability Company shall be entitled to receive distributions of cash or other property from the Limited Liability Company attributable to such interest after the effective date of the assignment. The effective date of an assignment of an interest of a Limited Liability Company Member in the Limited Liability Company under the provisions of this Article XIV for the purposes of Limited Liability Company accounting shall be the date the assignment is accepted by the Managing Member, which shall be not more than five business days following receipt of written notice of assignment and fulfillment of all conditions precedent to such assignment provided for in this Agreement.

14.5    Satisfactory Written Assignment Required.

Anything herein to the contrary notwithstanding, both the Limited Liability Company and the Managing Member shall be entitled to treat the assignor of an interest as a Limited Liability Company Member in the Limited Liability Company as the absolute owner thereof in all respects, and shall incur no liability for distributions of cash made in good faith to him, until such time as a written assignment that conforms to the requirements of this Article XIV has been received by the Limited Liability Company and accepted by the Managing Member.

14.6    Substituted Limited Liability Company Member.

(a)    The Managing Member may, but need not, in its sole discretion, permit an assignee or transferee (whether such assignee or transferee has acquired his interest by virtue of a voluntary assignment pursuant to Section 14.3, an involuntary transfer or a transfer by operation of law) of an interest (or a part thereof) of a Limited Liability Company Member in the Limited Liability Company to be and become a substituted Limited Liability Company Member ("Substituted Limited Liability Company Member") in the Limited Liability Company, entitled to all the rights and benefits under this Agreement of the transferor or assignor of such interest; but no such assignee or transferee shall be or become a Substituted Limited Liability Company Member unless and until the Managing Member in writing consents to the admission of such person as a Substituted Limited Liability Company Member, which consent may be withheld in the absolute discretion of the Managing Member.

The Limited Liability Company Members hereby consent and agree to such admission of a Substituted Limited Liability Company Member by the Managing Member, and agree that the Managing Member may, on behalf of each Limited Liability Company Member and on behalf of the Limited Liability Company, cause the certificate of Limited Liability Company of the Limited Liability Company to be appropriately amended, and recorded as so amended, and Schedule B hereto to be appropriately amended, in the event of such admission.

(b)    Each Substituted Limited Liability Company Member, as a condition of his admission as a Limited Liability Company Member, shall execute and acknowledge such instruments, in form and substance satisfactory to the Managing Member, as the Managing Member shall deem necessary or desirable to effectuate such admission and to confirm the agreement of the Substituted Limited Liability Company Member to be bound by all the terms and provisions of this Agreement with respect to the interest acquired. All reasonable expenses, including attorneys' fees, incurred by the Limited Liability Company in this connection shall be borne by such Substituted Limited Liability Company Member.

(c)    Any person who acquires an interest of a Limited Liability Company Member in the Limited Liability Company or is admitted to the Limited Liability Company as a Substituted Limited Liability Company Member or as a successor Managing Member shall be subject to and bound by all the provisions of this Agreement as if originally a party to this Agreement.

14.7    Indemnification and Terms of Admission.

Each Limited Liability Company Member shall indemnify and hold harmless the Limited Liability Company, the Managing Member and every other Limited Liability Company Member who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative, by reason of or arising from any actual or alleged misrepresentation or misstatement of facts or omission to state facts made (or omitted to be made) by such Limited Liability Company Member in connection with any Assignment, transfer, encumbrance or other disposition of all or any part of an interest as a Limited Liability Company Member in the Limited Liability Company, or the admission of a Substituted Limited Liability Company Member to the Limited Liability Company, against expenses for which the Limited Liability Company, the Managing Member or any other Limited Liability Company Member has not otherwise been reimbursed (including attorneys' fees, judgments, fines and amounts paid in settlement), actually and reasonably incurred by him in connection with such action, suit or proceeding.

14.8    Substitution Required for Vote.

Unless and until an assignee of an interest as a Limited Liability Company Member in the Limited Liability Company becomes a Limited Liability Company Member, such assignee shall not be entitled to vote with respect to such interest. In the event a vote of the Limited Liability Company Members shall be taken pursuant to this Agreement for any reason, a Limited Liability Company Member shall, solely for the purpose of determining his vote, be deemed the holder of any interest, or portion thereof, assigned by him in respect of which the assignee has not become a Limited Liability Company Member.

14.9    Effective Date.

The effective date of admission of a new or Substituted Limited Liability Company Member shall be the date designated by the Managing Member in writing to the Substituted Limited Liability Company Member, which shall not be later than five (5) business days after all requirements for substitution have been satisfied.

14.10    Death or Incapacity of Limited Liability Company Member.

The death or legal incapacity of a Limited Liability Company Member shall not cause a dissolution of the Limited Liability Company, but the rights of such Limited Liability Company Member to share in the profits and losses of the Limited Liability Company, to receive distributions of Limited Liability Company funds pursuant to Section 13.2 and to assign his interest as a Limited Liability Company Member in the Limited Liability Company shall, on the happening of such an event, devolve to the Limited Liability Company Member's heir, assign (or personal representative in the case of legal incapacity) or to the estate (in the case of a death of a Limited Liability Company Member) or in the event of the death of a Limited Liability Company Member whose interest is held in joint tenancy, pass to the surviving joint tenant(s), subject to the terms and

conditions of this Agreement, and the Limited Liability Company shall continue as a limited liability company. The successor-in-interest shall execute any and all documents necessary to assume the interests of the deceased or incapacitated Limited Liability Company Member. However, in no event shall a personal representative become a Substituted Limited Liability Company Member solely by reason of such capacity. The estate of the Limited Liability Company Member shall be liable for all the obligations of the deceased or incapacitated Limited Liability Company Member.

14.11    Optional Adjustment to Basis of Limited Liability Company Assets.

In the event of the transfer of the interest of a Limited Liability Company Member in the Limited Liability Company during the life of the Limited Liability Company Member or upon the death of the Limited Liability Company Member, the Managing Member may, in its sole discretion, make an election on behalf of the Limited Liability Company as provided in Section 754 of the Internal Revenue Code of 1986, as amended (if such an election is not already in effect for the Limited Liability Company) and cause the Limited Liability Company to make the adjustments to the basis of the property of the Limited Liability Company (with regard to the transferee Limited Liability Company Member only) as provided in Section 743 of the Internal Revenue Code.

ARTICLE XV
DISSOLUTION AND LIQUIDATION

15.1    Dissolution.

(a)    The Limited Liability Company shall be dissolved and terminated on the earlier of (i) a decision of the Managing Member concurred by the Board of Directors and a 75% super majority in interest of the Limited Liability Company; (ii) upon the sale of all or substantially all of the assets of the Limited Liability Company only as permitted by this Agreement; or (iii) upon the occurrence of any other event which, under the laws of the state of Delaware, would cause the termination or dissolution of a limited liability company; provided, however, that the death or legal incapacity of a Limited Liability Company Member shall not cause a dissolution of the Limited Liability Company.

(b)    Notwithstanding the provisions of Section 15 subsections (a)(ii) and (a)(iii) of this Section 15.1, the Limited Liability Company shall not be dissolved and terminated if the Managing Member and the Board of Directors and at least a 75% super majority in interest of the Limited Liability Company elect, within thirty (30) days after the occurrence of any such event of dissolution, to continue the business of the Limited Liability Company, and admit a new Managing Member or Managing Members.

The Managing Member may exercise a power of appointment for an interim Managing Member for a period of 90 days in the event the Managing Member is unable to continue in the position as the Managing Member, for whatever reason, whatsoever.

(c)    Upon any dissolution of the Limited Liability Company, the accountants then retained by the Limited Liability Company shall prepare a statement setting forth the assets and liabilities of the Limited Liability Company as of the date of dissolution, and such statement shall be furnished to all Limited Liability Company Members.

(d)    No vote by the Limited Liability Company Members to dissolve and terminate the Limited Liability Company pursuant to Section 15.1(a) shall be effective unless, prior to or concurrently with such vote, there shall have been established procedures for the assumption of the Limited Liability Company's obligations, and there shall have been an irrevocable appointment of an agent who shall be empowered to give and receive notices, reports and payments under such agreement, and hold and exercise such other powers as are necessary to permit all other parties to such agreement to deal with

such agent as if the agent were the sole owner of the Limited Liability Company's interest, which procedures are agreed to in writing by each of the other parties to such agreement.

       (e)     Upon dissolution, each Limited Liability Company Member shall look solely to the assets of the Limited Liability Company for the return of the Limited Liability Company Member's capital contribution, and if the Limited Liability Company property remaining after the payment or discharge of the debts and liabilities of the Limited Liability Company is insufficient to return the capital contribution of the Limited Liability Company Members, such Limited Liability Company Members shall have no recourse against the Managing Member.

    15.2    Liquidation.

In the event of liquidation of the Limited Liability Company assets, the assets shall be liquidated as promptly as possible, but in an orderly and businesslike manner as the Managing Member in consultation with the Board of Directors shall determine and so as not to involve undue sacrifice. All assets (including cash) net of liabilities of the Limited Liability Company, if any, shall be distributed to the members based on pro rata ownership percentage.

    15.3    Return of Account Balances.

The Managing Member shall not be personally liable for the return of all or any part of the capital account balances of the Limited Liability Company Members. Any such return shall be made solely from Limited Liability Company assets.

    15.4    Negative Balance.

Pursuant to the time limitations stated in Article X, any Limited Liability Company Member with a negative balance in his capital account after liquidation distributions shall be obligated to the Limited Liability Company to restore such negative balance to the extent liquidation distributions have been made which gave rise to such negative balance. Any assets so restored shall be treated as additional assets available for distribution pursuant to this Limited Liability Company Agreement.

    15.5    No Release.

No dissolution of the Limited Liability Company shall release or relieve any Limited Liability Company Member from his obligations under this Agreement.

ARTICLE XVI
ANNUAL ACCOUNT PERIOD; RECORDS; REPORTS

    16.1    Annual Account Period.

The fiscal year of the Limited Liability Company shall commence on January 1, and shall end on December 31. This can be amended by the Managing Member.

    16.2    Records.

    The Managing Member shall maintain, or cause to be maintained, complete and accurate records of all transactions of the Limited Liability Company. The Limited Liability Company shall use the elected (accrual or cash receipts and disbursements) basis of accounting for all purposes (including tax purposes) consistently applied as shall be appropriate and adequate for the Limited Liability Company's business and for carrying out all provisions of this Agreement.

16.3        Annual Reports.

After each fiscal year, the Managing Member shall cause to be delivered to each person who was a Limited Liability Company Member at any time during the fiscal year, an annual report containing the following:

> (i)        financial statements of the Limited Liability Company. Such statements shall include a balance sheet as of the end of the Limited Liability Company's fiscal year and statements of income, statements of cash flows, and the Limited Liability Company Members' equity and changes in financial position, for such fiscal year. Financial Statements will also be accompanied by a Representation Letter from the Managing Member (and Board of Directors) that all "material" matters of the LLC have been disclosed and verified by the Managing Member. The annual financial statements shall be reviewed by a CPA.

> (ii)        a general description of the activities of the Limited Liability Company during the period covered by the report, and

> (iii)        a report of any material transactions between the Limited Liability Company and the Managing Member or any of its affiliates, including fees or compensation paid by the Limited Liability Company and the services performed by the Managing Member or any such affiliate for such fees or compensation.

16.4        Tax Information.

On or before April 15 of each calendar year, the Managing Member will cause to be delivered to each person who was a Limited Liability Company Member at any time during the previous fiscal year all information concerning the Limited Liability Company necessary for the preparation of such Limited Liability Company Member's federal income tax returns, including a statement showing such Limited Liability Company Member's share of profit or loss, deductions and credits for such year for federal income tax purposes, and the amount of any distribution made to or for the account of such Limited Liability Company Member pursuant to this Agreement.

16.5    Tax Returns.

The Managing Member shall cause income tax returns for the Limited Liability Company to be prepared and timely filed with the appropriate authorities.

## ARTICLE XVII
## AMENDMENTS AND MEETINGS

17.1    Amendment by Limited Liability Company Members.

Except as otherwise required by law, this Agreement may be amended in any respect (unless otherwise set forth herein) with an affirmative vote of a 75% super majority in interest of the Limited Liability Company. Without the consent of each Limited Liability Company Member to be affected by the amendment, this Agreement may not be amended so as to (i) convert a Limited Liability Company Member into a Managing Member, (ii) modify the limited liability of a Limited Liability Company Member, or (iii) terminate the Managing Member.

17.2    Amendment by Managing Member.

In addition to any amendments otherwise authorized herein, the Managing Member may amend this Agreement, without the consent of any of the Limited Liability Company Members, (i) to reflect changes validly made in the membership of the Limited Liability Company and the capital contributions of the Limited Liability Company Members to the Limited Liability Company in accordance with this agreement, (ii) to comply with the then-existing requirements of the Internal Revenue Code, Treasury Regulations and rulings of the Internal Revenue Service affecting the status of the Limited Liability Company as a limited liability company for federal income tax purposes, in accordance with advice given to the Managing Member by the Limited Liability Company's independent accountants, (iii) to comply with any changes in the Delaware statutes. The Managing Member will notify the Limited Liability Company Members in a timely basis concerning any changes concerning this section 17.2 ii and iii.

17.3    Prohibited Amendment.

No amendment will be adopted which will directly or indirectly affect or jeopardize the status of the Limited Liability Company as a limited liability company for federal income tax purposes.

17.4    Amendment of Certificate.

In the event this Agreement shall be amended pursuant to this Article XVII, the Managing Member shall amend the Certificate of Limited Liability Company to reflect such change if required by the Code or if it deems such amendment to be reasonably necessary.

ARTICLE XVIII

[THIS SECTION INTENTIONALLY LEFT BLANK]

ARTICLE XIX
NOTICES

Any other offer, acceptance, election, approval, consent, request, waiver, notice or other document required or permitted to be given pursuant to any provision of this Agreement shall be deemed duly given only when in writing, signed by or on behalf of the person giving the same, and either personally delivered (with receipt acknowledged by the recipient) or deposited in a designated United States mail depository, registered or certified mail, return receipt requested, postage prepaid, addressed to the person or persons to whom such offer, acceptance, election, approval, consent, request, waiver or notice is to be given at their respective addresses indicated herein, or at such other address as shall have been set forth in a notice sent pursuant to the provisions of this Article XIX.

ARTICLE XX
BINDING EFFECT

Except as otherwise herein expressly provided, the provisions of this Agreement shall be binding upon and inure to the benefit of the parties hereto, their respective personal representatives, heirs, successors and permitted assigns.

ARTICLE XXI
COUNTERPARTS

This Agreement may be executed in any number of counterparts, each of which shall for all purposes constitute one agreement binding on all of the parties hereto.

ARTICLE XXII
APPLICABLE LAW

This Agreement shall be governed by and construed in accordance with the laws of the state of Delaware.

ARTICLE XXIII
PARAGRAPH HEADINGS

Paragraph headings or captions contained in this Agreement are inserted only as a matter of convenience and for reference, and shall not be construed in any way to define, limit or extend or describe the scope of this Agreement or the intention of the provisions thereof.

ARTICLE XXIV
SCHEDULES

All schedules attached hereto are expressly made a part of this Agreement, as fully as though completely set forth herein, and all references to this Agreement herein or any of such schedules shall be deemed to refer to and include all such schedules.

ARTICLE XXV
VARIATION IN PRONOUNS

All pronouns and any variations thereof shall be deemed to refer to masculine, feminine, neuter, singular or plural, as the identity of the person or persons may require.

ARTICLE XXVI
ARBITRATION

In the event of any dispute arising out of the terms of this Limited Liability Company Agreement, the offering of Limited Liability Company Units in this, or any action or inaction of the Managing Member, each party hereto, including all of the Parties, Managing Member and Limited Liability Company Member(s), agree to binding arbitration as follows:

Each party shall select an attorney at law licensed to practice in the state of Delaware to act as the Investor's arbitrator. Each party shall pay the fees of the Investor's own arbitrator. The two arbitrators so selected shall meet and choose a third attorney, also so licensed, to act as an arbitrator.

Each party shall pay one-half of the fees of the third arbitrator. All three arbitrators shall meet in the City of Tampa, State of Florida, and decide the dispute. The decision of any two of the arbitrators so selected, shall be binding and enforceable in any court of law. In the event any party violates the terms of this arbitration provision, that party shall be liable for reasonable attorneys' fees and costs incurred to appear and enforce the terms of this provision.

In the event of any litigation other than arbitration, as herein provided, the prevailing party shall be entitled to recover as additional damages, the Investor's reasonable attorneys' fees and costs it will have incurred. The Limited Liability Company shall pay the attorney' fees and other expenses of the Managing Member for any action under this Article.

ARTICLE XXVII
LEGAL MATTERS

As part of the consideration of this Limited Liability Company Agreement it is expressly agreed that any legal matter which must be litigated shall be litigated in the proper court of the City of Tampa, state of Florida, which courts shall have exclusive jurisdiction over all matters related to this Limited Liability Company Agreement. It is additionally understood that proper venue shall be in the City of Tampa, state of Florida. In the event of litigation to enforce any of the provisions of this Limited Liability Company Agreement, including but not limited to enforcement of the arbitration provision, the prevailing party shall be entitled to recover as costs all reasonable legal fees it will have incurred including attorney's fees, expert witness fees, court costs and other related costs. Any party who commences an action outside of the City of Tampa, state of Florida, waives the right to recover any legal fees including attorney's fees and court costs. All matters shall be controlled by the laws of the state of Delaware.

Should any legal action or inquiry be taken against, or made upon, the Managing Member or the Limited Liability Company, the Managing Member is authorized to use Limited Liability Company funds to defend such actions whether initiated from a private, regulatory or investigative source.

ARTICLE XXVIII
SUITABILITY OF INVESTORS

This offering is strictly limited to investors who meet the suitability standards set forth herein below. This memorandum constitutes an offer strictly limited only to investors who meet such standards and who qualify as "Accredited Investors" and up to 35 "Non-Accredited Investors", who meet the stringent suitability standards outlined herein and in the Purchaser Questionnaire in the form attached hereto as Exhibit "B". The Managing Member claims exemption from registration pursuant to Rule 506 of Regulation D of the Federal Securities Act of 1933, as amended (the "Act").

Investment in Limited Liability Company Units involves a high degree of risk and is suitable only for persons having substantial financial resources, who understand the long term nature, the tax consequences, and risk factors associated with this investment.

ACCREDITED INVESTORS:

1. Limited Liability Company Units will be sold only to those investors who submit a Purchaser Questionnaire in the form attached hereto as Exhibit "B" establishing to the satisfaction of the Managing Member that:

The Investor is an "Accredited Investor" as such term is defined in rule 501 of Regulation D promulgated under the Securities Act of 1933, as amended the ("1933 Act"), that is any person who comes within any of the following categories, or who the issuer reasonably believes comes within any of the following categories, at the time of the sale of securities to that person:

   a) a bank, insurance company, registered investment company, business development company, or small business investment company;
   b) an employee benefit plan, within the meaning of the Employee Retirement Income Security Act, if a bank, insurance company, or registered investment adviser makes the investment decisions, or if the plan has total assets in excess of $5 million;
   c) a charitable organization, corporation, or partnership with assets exceeding $5 million;
   d) a director, executive officer, or general partner of the company selling the securities;

e) a business in which all the equity owners are accredited investors;

f) a natural person who has individual net worth, or joint net worth with the person's spouse, that exceeds $1 million at the time of the purchase, excluding the value of the primary residence of such person;

g) a natural person with income exceeding $200,000 in each of the two most recent years or joint income with a spouse exceeding $300,000 for those years and a reasonable expectation of the same income level in the current year; or

h) a trust with assets in excess of $5 million, not formed to acquire the securities offered, whose purchases a sophisticated person makes.

2. Subscriptions will not be accepted by the Company from more than 35 Non-Accredited Investors who fail to meet the criteria above.

3. The Investor has such knowledge and experience in financial and business matters that he or she is able to evaluate the merits and risks of an investment in the Units.

4. The Investor has the financial ability to bear the economic risk of an investment in the Units, adequate means of providing for his or her current needs and personal contingencies and no need for liquidity in an investment in the Units.

5. The Investor is acquiring the Units for his or her own account for investment and not with a view to resale or distribution.

Each investor will also be required to represent that:

a) he or she knows that the Units have not been registered under the Securities Act of 1933, as amended, and that he or she has no right to require such registration;

b) he or she understands that the Units will be restricted as set forth in the Memorandum, which includes restrictions against transfer unless the transfer is not in violation of federal securities laws, as amended, and applicable state securities laws, including investment suitability standards;

c) payment for the Units will cause no undue hardship without undue difficulty; and

d) The subscriber's commitment to other investment programs, combined with this subscription for Units, is reasonable in relationship to net worth.

## ARTICLE XXIX
## PURCHASE OF UNITS

The minimum purchase of Limited Liability Company Unit is two (2), however the Managing Member reserves the right to accept subscription for less than one (1) Unit, and such Unit will be sold only to individual persons who make a written representation that the amount of this investment is less than 10% of his or her net worth. Please study the terms of the Subscription Agreement, this Memorandum and all related documents carefully before you decide to subscribe for Units. The Managing Member will review all subscription documents and will not accept subscriptions from any person who does not represent that he or she complies with the applicable standards specified above.

## ARTICLE XXX
## SEVERABILITY

If any term of this Agreement is held invalid or unenforceable by a court of competent jurisdiction, then this Agreement, including all of the remaining terms, will remain in full force and effect as if such invalid or unenforceable term had never been included.

## ARTICLE XXXI
## ENTIRE AGREEMENT

This Agreement constitutes the entire agreement and understanding between the parties and may not be modified or amended except as specifically provided for in this Agreement.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

Each of the Limited Liability Company Members listed on Schedule B attached hereto, each acting by and through his, her or its duly authorized and empowered attorney-in-fact:

By: _____

Acting on behalf of and as attorney-in-fact for each of the foregoing Limited Liability Company Members

By: _____

Managing Member/Milind Bharvirkar, President

SCHEDULE A
GLOSSARY

"Affiliate" means any person who directly or indirectly controls or is controlled by or under common control with a person or entity, or a person owning or controlling ten percent (10%) or more of the outstanding voting securities of the entity to which said definition relates, and any officer or director of such entity.

"Agreement" means this Limited Liability Company Agreement and any exhibits thereto.

"Allocation of Net Income and Losses" shall mean the method by which net income, net losses, and tax credits shall be allocated on the Limited Liability Company books and for the purpose of filing state and Federal income tax returns.

"Capital Account" means, with respect to any Member, an account consisting of such Member's Capital Contribution, (1) increased by such Member's allocated share of net income and gain, (2) decreased by such Member's share of net losses and deductions, decreased by any distributions made by the Company to such Member, and otherwise adjusted as required in accordance with applicable tax laws. The Managing Member, in his sole discretion, has or may designate new Members as "Initial Investors" in an Exhibit C to this Agreement. Initial Investors, upon purchasing Membership Units from the Company, shall have all of the special rights designated to them in this Agreement. Amounts paid to purchase Units in the Company by an Initial Investor will be allocated as a net positive balance to the Capital Account of such Initial Investor. Prior to net gains or losses being allocated to any other Member's Capital Account (besides that of an Initial Investor) Initial Investors shall be repaid, on a pro rata basis, their Capital Contributions. Subsequent to the date all Capital Contributions of Initial Investors are repaid, and in no event prior to such date, all remaining Members will be eligible for the pro rata distribution of all net profits of the Company as set forth in this Agreement.

"Capital Contribution" means, with respect to each Limited Liability Company Member, the aggregate value of (1) cash and the fair market value of property other than cash and (2) services that are contributed and/or agreed to be contributed to the Limited Liability Company, by such Limited Liability Company Member, as listed in each Limited Liability Company Member's Capital Account, as may be updated from time to time by Managing Member in accordance with the terms of this Limited Liability Company Agreement.

"Cash Available for Distribution" means the amount of money available to the Limited Liability Company Members after payment of all costs and any reasonable reserve for future expenses, inventory investments, and capital projects as determined in the sole discretion of the Managing Member.

"Cash Flow" means (during each year of the Limited Liability Company) gross receipts from operations of the Limited Liability Company less cash operating expenses attributable thereto except that the following rules shall apply: (i) depreciation or amortization of any kind shall not be a deduction from gross receipts and (ii) any reserves that the Managing Member may reasonably establish (or increase) shall be deemed a cash operating expense when funded into the reserve. Expenditures from funds previously reserved pursuant to subsection (ii) of the preceding sentence shall not, however, be deemed a cash operating expense.

"Certificate of Limited Liability Company" means the instrument (Form LP-1 or such other form deemed appropriate by the Managing Member) executed by the Managing Member and duly filed with the Delaware Secretary of State.

"Distributable Cash." This term means all funds received by the Limited Liability Company from Limited Liability Company activities other than the offering and sale of Limited Liability Company Units, minus (a) all operating expenses of the Limited Liability Company, including, if any, all remaining unreimbursed offering

expenses, and expenses incurred and outlays in connection with the lease deposits on equipment and facilities, operating costs and overhead, if any; (b) such reserves as the Managing Member deems necessary in accordance with good business practice, to cover future Limited Liability Company expenses and capital expenditures. The Limited Liability Company will allocate net loss, if any, for each fiscal year to the Investors as set forth in this Limited Liability Company Agreement. Tax credits and other similar items will be allocated at the end of each fiscal year in the same manner as set forth above for the allocation of net losses. "Managing Member" means Priatek Executives, LLC.

"Initial Investors" means any person who purchased one or more Units and each person who succeeds to the interest of a Limited Liability Company Member in such Units under terms which would call for the investor to receive payouts totaling 100% of the amount of their initial Capital Contribution in the Limited Liability Company prior to payouts to other members. This would be defined in the investors PPM or other investment agreement and would be accepted by the Managing Member.

"Limited Liability Company Member" means any person who purchases one or more Units and each person who succeeds to the interest of a Limited Liability Company Member in such Units, and shall include the Managing Member to the extent that the Managing Member purchases or succeeds to the interest of a Limited Liability Company Member in one or more Limited Liability Company Units.

"Limited Liability Company Members" means the Managing Member and the Limited Liability Company Members.

"Limited Liability Company" means Priatek, LLC, a Delaware limited liability company.

"Limited Liability Company Agreement" means the Agreement of Limited Liability Company of Priatek, LLC.

"Majority in Interest of Limited Liability Company Members" means Limited Liability Company Interest holders (including the Managing Member) whose aggregate Units exceed sixty percent (75%) of the aggregate Units of the Limited Liability Company.

"Organization and Offering Expenses" means all costs and expenses incurred on behalf of the Limited Liability Company including, but not limited to, professional fees, legal and accounting fees, printing expenses, and regulatory compliance fees.

"Unit" means one of the limited liability company interests in the Priatek, LLC.

- Balance of this page is intentionally blank -

**SCHEDULE B**